The next case on our calendar today is N. Ray Petrobras Securities, and we have Ms. St. John for the appellant, Mr. Haynes. Thank you, Your Honor. May it please the Court, Anna St. John representing Appellant Haynes. This appeal is about the calculation of attorney's fees. From Mr. Haynes's objection- I am barely hearing you. Is there some way you can increase your sound level? I'll try without the headphones. Is that better? Good. Much better. Much better. Great. Thank you. This appeal is about the calculation of attorney's fees for a single objection by Mr. Haynes to a class action settlement and attorney's fee request by class counsel. This single effort by Mr. Haynes resulted in an increase to the benefit recovered by class members of $46 million. Under Hensley v. Eckerhart, the most critical factor for setting a litigant's fee award is the degree of success. Applying Hensley, a panel of this Court in a previous appeal held that the District Court erred initial fee determination by not considering Haynes's success. We're back before this Court today because on remand, the District Court again did not consider Haynes's success in calculating his fee award on remand. Instead, the District Court identified the wrong numbers. It cited the benefit created by Haynes as $18 million, which is about $30 million less than the actual number, and the District Court didn't even consider whether that more limited benefit justified a more reasonable fee for Haynes. Ms. St. John, let me just ask you about that for a minute because it is the incorrect number, but the judge had set what he thought was the correct amount based upon the correct number prior to that time, right? In the first decision, he had the correct number of $46 million, right? He did have the correct number in the first appeal, and a panel of this Court held that the Court did not properly consider that figure in its analysis. Well, no. What we asked him to do was to see whether or not the other potential success on other portions should increase that amount, whether that was the Brazilian objection, whether that was severable, in other words, right? Wasn't that what we asked him to analyze? Well, I read the Appeals Court order as making three requests of the District Court. First, consider the degree of success because it held that the Court had not explained how it considered Haynes' success in the first fee evaluation. Second, consider how all of the fee objections relate to the same common core of facts or involved in a related work. And third, whether the all-inclusive time, as we call it, the time required to object at all, should have been compensated for Haynes. Right. So, my point is, he used the correct number to calculate what he thought was the amount that was recoverable as it relates to the Brazilian objection. On remand, he determined that the success was limited to the Brazilian objection. There was no other success. It's severable. So, he didn't have to go back and, to the extent he had the wrong number, he didn't have to go back and recalculate because he'd already done that and all he was saying to us now is, I've gone back, I looked at it again, and I still think that the Brazilian objection is severable, right? That's what he said. He did say he thinks that the Brazilian objection is severable, but he did so based on the different legal arguments made by Haynes. His opinion does not take into account the interrelatedness of Haynes' work on all of the fee objection or the common facts. And the panel of this court identified specific facts that it viewed as common among all of the fee objections Haynes raised, and the district court didn't look at any of them. It continued to look explicitly- Explain to me how it's interrelated, because I was having a hard time understanding that reading the papers. The Brazilian objection, you just have to show that they don't have pro hoc vice, they don't have the ability, they did not file pro hoc vice, the foreign attorneys, and they don't have the ability, which is just a factual thing, you just confirm whether or not they have done that. That seems pretty straightforward. It doesn't involve any review of billing entries or anything like that, which the other objections obviously involve. And then you just have to find the case that says that it should be for costs for those attorneys, which is a pretty, I think, straightforward, like, legal, just find the case. So all these other things that relate to the other objections of looking at the timesheets, which is obviously a very time intensive thing, have no application to the Brazilian objection. Well, Your Honor, I think if you look at the the way that one approaches an objection, that's it's a little bit different. You know, we didn't I didn't know prior to this objection, for example, that foreign attorney contract time was not permissibly compensated. And so it took legal research, a holistic approach to legal research as to whether this 800 page submission was legally proper to find that argument and to figure out that, oh, you know, there are these attorneys with different qualifications because that exhibit was in one place in this giant submission. And then their hours and load start time were in a different place in the submission. It's a different approach, I think, that we're thinking about. You can see their hours, their hours and whether or not they properly billed them and the to this objection. Right. Well, if we're billed as a cot, we have to look at what we're billed as, if the costs, if they were billed as a cost, that would be fine. But we had to go and see, oh, no, they were billed at this inflated multi hundred dollar an hour rate. That takes two seconds to confirm. You don't have to look at I'm saying is you don't have to do what normally was required when making objections to fees and try to raise issues with respect to entries in particular. This was an overall objection to whether or not, given their lack of pro they could be compensated at other than costs. Well, I'll also point out that we made the argument that all of the contract attorney time should be billed as a cost. And so the Brazilian contract attorney argument was a sub argument or an argument in the alternative for that position. And under Hensley, the work on both the successful Brazilian sub part of that argument and the broader contract attorney at cost argument are interrelated and therefore all of that work can be compensated. The district court didn't acknowledge that argument, the holistic argument that all contract attorneys should be billed at cost. And, you know, I think that under the this court's remand order, it was instructed to do so. I also want to point out that there was another order by the district error by the district court as well, and that was in its discounting the all inclusive time. The district court didn't give any reasons whatsoever for excluding two of the attorneys, all inclusive time, and it relied on improper factors for discounting two other attorneys, all inclusive time. The length of involvement is already reflected in the number of hours in the Lodestar and it's improper to count that factor twice to further reduce the Lodestar that's in Purdue. And, you know, it's unclear why a senior attorney's time should not be spent on overall strategy. That's the proper way senior attorneys should be involved in a case under court precedent. I see my time has expired. I'm happy to answer further questions or I just had a fight on the two attorneys who the district court did not address who assisted. We're talking about, I think, under four thousand dollars, eight hours, right? It was in the single thousands. Yes, your honor. All right. All right. Thank you. All right, Mr. Lieberman, you're up. Good morning, your honor. I think that this appeal generally invokes Hensley's caution that fee disputes not become an entire litigation or entire issue of play. Here we have really a dispute between eighty thousand dollars that appears to, if it continues, be subject to a potential remand by by appellant and then potential appeal based on the results of whatever that remand is. The bottom line is, is that Judge Rakoff did do an intensive analysis in line with Hensley, in line with the Second Circuit directive. It looked at two things. It looked at whether or not, first of all, the Brazilian issue was favorable from the overall U.S. contract attorney issue. It held it clearly was. You clearly the kind of the U.S. attorney issue with respect to charging costs is an argument that's really made not only by this objector, Haynes and the CEI on several occasions in prior litigations, is born and brought by by litigants and nearly in objectors, nearly every single litigation and class action litigation before courts when there's an objection. So then that's that's really a kind of cookie cutter generic argument. Then you look at there was a more precise and more refined argument with respect to the Brazilian document review attorneys. And the court looked at that and said it's different, different attorneys, different hours, different case law. This is a separate and severable issue. And what is really important is, is that is that it's not really looking for the same relief between the U.S. attorneys and the Brazilian attorneys. If if if if appellants won on the U.S. attorneys, that would have reduced the fee yet even further. And so it is severable. You have it's a quirk when it comes to securities class class actions or class actions generally, disputes of attorney's fees that you're always going to have. You've built too much. That's just a standard knee jerk reaction. And really the the rubber hits the road when it's the question is why and specifically what are the reasons? And then there were kind of generic issues raised when it came to the amount, the summaries and the amount of time expended and whether or not they should be billed a cost. And the very refined issue of of Brazilian document review attorneys. There, the court did properly rule that there are several that's then it comes to the issue regarding all inclusive costs. And I think it's really important is that the is the wording of the Second Circuit when looking at that. The Second Circuit said we should look at all inclusive costs necessary to maintain the appeal. And so that they gave examples. An example is participating in discovery. An example is filing whatever paperwork is necessary to file the objection and then presenting at a at a hearing. That's the only thing that's necessary to maintain an appeal. And it's a very precise formula. We're not looking at all inclusive costs, meaning issues that are jumbled together. That's not what all inclusive costs mean. I mean, they mean specific discrete items that were necessary in order to get to the to an appeal or an objection, rather, in the first place. And and Ted Frank, you know, advising counsel for twenty seven point six hours is not necessary to maintain the appeal. It may be it may have been counsel may may argue that it was useful. It may may argue that it advanced the ball for their appeal. That that may may very well be. But it was not necessary. It was not an all inclusive cost necessary to maintain the appeal. And that was the that was the mandate to Judge Rakoff and that he clearly properly dispatched and did not credit those hours. Then we're speaking really, I think, a big part of the issue that's brought to play and brought to bear is the fact that other than the seven point seven hours allocated to the Brazilian document review attorney and the 11 hours that were allocated to the settlement class by that by counsel, everything else in the billing sent presented by Haines was it was it was a jumble was it was it was just a was indecipherable what issue counsel was working on and what particular on the myriad issues that they raised on appeal. And so they've got basically 18 hours. They can really segregate per issue. And then the rest of the two hundred thirty seven hours billed are really a question mark. And then the criticism comes to Judge Rakoff, well, you didn't do a better job at divining what hours here were better or were necessary to the appeal or what hours were severable. But that's not Judge Rakoff's job. And Hensley cautions the parties that it's the job of the appellant to specifically segregate the hours that they want to be compensated for. And we cannot come back to Judge Rakoff and say, well, besides for 18 hours, I didn't do  So therefore, you have to go back and you must have done something wrong here and go back and take another review at the at the paperwork. We don't think that's a policy wise. We don't think it's fair. And certainly we don't think it's something that would encourage efficient litigation going forward. So so so that's those really come to the the crux of the arguments here. You the two attorneys that Judge Rakoff didn't didn't address again, it was, as your honor noted, it was only four thousand dollars. But again, they didn't perform tasks necessary in order to to establish the objection. They they they had some generic research descriptions that they were brought, some drafting generally. There's nothing clear that that was a test necessary for the maintenance of the of the what the Second Circuit asked Judge Rakoff to look at. He did look at at it and he gave a number as to what he felt was thirty three thousand was it was the amount billed to it. And then he discounted it because generally what we're speaking about here is is a request for one hundred and initially was request for one hundred ninety nine thousand. Now it's been lowered to one hundred seventeen thousand or maybe one hundred five thousand. It's not clear where appellants stand at this very moment for about two weeks of work. And it's simply it's this is what the argument is in wasting a sniffing amount of ink, judicial resources and time over this this kind of failure to parse or alleged failure to parse by Judge Rakoff when it was impossible to parse. You simply did not have a record that allows Judge Rakoff to make the analysis that Miss St. John asked for. And so if there were if there were if there were hours or billable, clearly billable to to a test necessary to maintain the appeal, then certainly that that that Judge Rakoff looked at that and found what he could and credited to to appellants. If there was a seven point seven hours that were allocable to the Brazilian review, then certainly that should be allocable. But it simply is not Judge Rakoff's task to divine which hours are all inclusive, necessary, the word being necessary tasks versus the the and versus tasks that really were just in furtherance of arguments. I actually find looking at Miss St. John, you know, admits in her papers that she says that eleven hours were attributable to the certification of the class. Only eleven hours. That was the main argument brought by appellants in their objection was that the certification class was too broad. And their papers only show eleven out of two hundred and thirty seven hours that were brought to this very it was the first issue raised in their brief. It was the first issue raised in oral argument with the settlement class. And they say only eleven hours should be dedicated to that. And the rest of the two hundred thirty seven hours are compensable. It's simply implausible. It's simply implausible. That critical argument that was raised, raised right when the horses came out of the gate on the objection and on the end of oral arguments, only eleven hours are dedicated to that. And so really what you're looking at, and that's really what's what's reflected in Judge Rakoff's opinion, is the skepticism, as Judge Rakoff said, and the lack of plausibility. It's not plausible you only have eighteen hours that you can segregate out. It's not plausible you only have eleven hours that are attributable to the settlement class. And what you have is a mosh of hours that appellants here are asking for, for really an extra eighty thousand dollars. And I think the I think the answer to appellants should be enough. It's really just enough. Judge Rakoff has looked at this twice. The appeal is done. This case is the monies have been distributed to the settlement class. And let's move on with this. I mean, there's you know, the CIA is involved in many other objections and where they can raise these issues. But when it comes to this, when it comes to this litigation, the judge has looked at the record, has parsed it, has given his analysis, has actually, we believe, given much more credit to appellants than they actually deserve. Judge Rakoff, at the outset, at the very first plenary approval hearing, much to our detriment and dismay, said that only five point five percent to six point two percent should be granted in the case in a large mega fund class action. And guess what? Guess what he gave? Whether it was because of billing, whether it was because of because of Brazilian attorneys issues, he gave six point two percent. He had forecast that and shadowed that well in advance of the existence of the objectors here. And that's really we think he actually gave far more credit to the to the to the objection and its results than actually was due. But that's not a dispute on appeal. But he's given the credit and he's given he's allocated the fees. And really, it's time to it's really time to move on and let this case let this case lie and move on to other more important matters for this court and hopefully for parties. Thank you, Mr. Lieberman. Miss St. John, you have three minutes for rebuttal. Thank you. Appellees do a lot of work trying to provide reasons for the district court's analysis and decision that simply are not supported by the opinion itself. There was no finding that the hours were a jumble or that any hours were unreasonable. And if the district court wanted assistance with the very clearly marked entries that relate to discovery or hearing preparation, we would have readily provided that that's readily available from the Lodestar timesheets that we provided to the extent that certain entries you can't parse, whether it relates to the Brazilian contract attorney issue or another fee argument that gets to the interrelatedness of the work. And Hensley recognizes that it acknowledges that in some cases the work devoted to an interrelated sub-arguments because the work is so interrelated. And that's the case here. The main argument, the objection was split pretty evenly between an objection to the certification and to the fee objection. You know, they both were a substantial part of the brief. I wouldn't say that one was major versus another minor one. They both were major objections. And I also want to go back to the the court's consideration of the forty six million benefit created by Haynes. Now, the original fee award by the district court was based on the number of pages that argument took up in the brief. That was the kind of mathematical bean counting that Hensley rejects. And a panel of this court recognized that by saying to the district court on remand, please consider the degree of success because we don't see that you did that here. And so I don't think it's accurate to say that the eleven thousand dollar initial determination took that forty six million dollar benefit into account when the district court expressly relied on the number of pages in the objection filed by Haynes. And then once again, on remand, we know that the district court erred in considering the benefit. The number is not in dispute. The court may have bumped up the number based on a higher, a nearly double, more than double the benefit that it actually thought Haynes had provided. So we are not asking for further remand and a further appeal. We also agree enough is enough. Mr. Haynes provided significant benefit to the class and we are asking this court to enter an order awarding him his lowest star of seventeen thousand dollars. And appellees have not objected to that course. I think we both agree that another remand order is not in anyone's interest and it's not in the court's interest. And with that, if there are no further questions, we'll rely on our briefing. All right. Thank you very much to both of you. We'll reserve the decision. Thank you. Thank you.